## C. W. Scofield, Plff. in Err., *v.* H. L. Blackmarr.

The rejection by the court below, of evidence offered by defendant in an action brought to recover damages for the breach of a contract for the purchase of oil to be delivered and paid for in the future, for the purpose of proving that seller did not intend to sell, nor the buyer to purchase, oil for actual delivery, but merely to enter into a contract for the payment of differences at the time the contract should fall due; and also of evidence to prove that by a custom recognizable by the oil trade at the place where the contract in controversy was executed a sale of oil to be delivered in the future at a price in advance of the market price at the time the contract is executed is to be settled by payment of differences, and that an actual delivery of the oil is not contemplated, affirmed by a divided court.

(Decided May 24, 1886.)

Error to the Common Pleas of McKean County to review a judgment for plaintiff in foreign attachment proceedings. Affirmed by a divided court.

On December 8, 1882, H. L. Blackmarr and C. W. Scofield entered into a contract of which the following is a memorandum:

12-8 Sold C. W. Scofield twenty-five thousand barrels, United certificates, buyers 60 days at $1.25, contract to be made.

(Signed) C. W. Scofield.

This contract as finally drawn was as follows:

Bradford, Pa., December 8, 1882.

Sold to C. W. Scofield, for account of H. L. Blackmarr, twenty-five thousand (25,000) barrels of crude petroleum at one dollar and twenty-five cents ($1.25) per barrel, forty-two (42) gallons in bulk, to be delivered at buyer's option at any time from the eighth day of December, 1882, to the 6th day of February, 1883, both days inclusive, in accepted United Pipe Line receipts, pipeage unpaid, and to be paid for in cash, as delivered, with no notice from buyer to seller. Should no notice be given delivery shall be made on the sixth day of February, 1883. Place of delivery, Bradford, Pa. Brokerage —— cents per barrel, by seller. No margins.

Accepted. C. W. Scofield.

Subsequently the following notice was given:

Bradford, Pa., Feb. 6, 1883.

To H. L. Blackmarr:

Dear Sir:

You are hereby notified that a certain pretended contract, alleged to have been made by and between yourself and C. W. Scofield, about December 8, 1882, for a pretended sale of 25,-000 barrels of oil at $1.25, is illegal and void, and will in nowise be carried out by me in any respect; and you are further notified that any attempt to establish a difference by a sale of the oil, either publicly or privately, will be the subject of an action for damages. Yours truly,

C. W. Scofield.

By Berry, Elliott, and Jack, Attorneys.

At the expiration of sixty days Blackmarr tendered the 25,000 barrels of oil to Scofield, and they were not accepted; whereupon Blackmarr sold the certificates in open market on the oil exchange to the highest bidder, and the sale brought $1.04½ per barrel.

This action was brought by Blackmarr to recover from Scofield the difference between the contract price and the price which the oil actually brought.

The defense was that the contract was not what it appeared to be upon its face; but that instead of being a contract for the sale and purchase of oil actually delivered and paid for, by the intention of the parties at the time it was entered into, no oil was to be actually delivered; but that this contract was a wagering and gambling contract and was to be settled at the expiration of the time by the payment of differences in the value of the oil at the time of delivery, as compared with the price fixed in the contract.

In support of this contention defendant made the following offers of evidence, the rejection of which by the court became the subject of the assignments of error.

[1. Counsel for the defendant offer to prove that on December 8, 1882, the market value of oil was $1.12 or about that price, within a cent or two of that price, at the place where the contract between the parties was executed; that at the price which the oil could have been purchased for on that day, and all carrying charges, such as have been sworn to by the witnesses for the plaintiff, from that time until the oil was to be delivered under the terms of the contract, the oil would have cost the defendant but about $1.16 or $1.17 per barrel, to be followed by evidence of his ability to make the present purchase of the oil. And this is offered for the purpose of proving or tending to prove that the plaintiff did not intend to sell nor the defendant to purchase, by the contract sued upon, oil for actual delivery, but merely to enter into a contract for the payment of differences at the time the contract should fall due.]

[2. Counsel by defendant offer to prove by this (Hawkins) and other witnesses, that by a custom recognizable by the oil

trade generally at the place where the contract in controversy was executed, a sale of oil to be delivered in the future at a price in advance of the market price at the time the contract is executed, is to be settled by payment of differences; and that it is not contemplated that actual oil shall be delivered; and that the plaintiff and defendant were aware of the custom proposed to be proved at the time they entered into this contract.]

The court instructed the jury that if they believed from the evidence that the parties did not intend by the contract entered into by them that 25,000 barrels of actual oil should be delivered by Blackmarr to Scofield and by Scofield received and paid for at $1.25 per barrel, but that the purpose of said contract was to make a fictitious sale and purchase and to be settled on differences, the contract was illegal and the verdict should be for the defendant.

The jury found for plaintiff, and defendant brought error.

*G. L. Roberts, D. H. Jack,* and *M. F. Elliott,* for plaintiff in error.—In Irwin v. Williar, 110 U. S. 499, 28 L. ed. 225, 4 Sup. Ct. Rep. 160, the court below admitted evidence tending to show that among the general usages and customs obtaining at Baltimore among grain commission merchants were certain ones which had long existed, etc.

The supreme court says that it was error to admit the evidence of such customs as would affect the contract, unless it was shown in connection with the proof of such custom that the party to be affected thereby knew of its existence.

In this case plaintiff in error offered to prove that the parties were aware of the universal custom. The case in 110 U. S. 499, 28 L. ed. 225, 4 Sup. Ct. Rep. 160, and the cases therein cited, rule this question in favor of plaintiff in error.

A custom so long persisted in as to be known and practised by a community is the law of the particular business in which it exists. Such a custom is presumed to be in view of the parties when they contract about its subject-matter. To make a usage obligatory on the parties it should be so well settled that persons engaged in the trade must be considered as

contracting in reference to it. Adams v. Pittsburgh Ins. Co. 95 Pa. 356, 40 Am. Rep. 662; McMasters v. Pennsylvania R. Co. 69 Pa. 374, 8 Am. Rep. 264; Carter v. Philadelphia Coal Co. 77 Pa. 286.

*F. L. Blackmarr* and *B. D. Hamlin,* for defendant in error.— A transaction which on its face is legitimate cannot be held void as a wagering contract by showing that one party only understood and meant it so. Irwin v. Williar, 110 U. S. 507, 28 L. ed. 229, 4 Sup. Ct. Rep. 160.

A local usage must not conflict with the settled rules of law, nor go to defeat the essential terms of the contract. Coxe v. Heisley, 19 Pa. 247. See 3 Kent, Com. 360; 7 Johns. 389; 8 Taunt. 254; 11 Ad. & El. 23; 2 Sumn. 377; 2 Greenl. Ev. § 292; Snowden v. Warder, 3 Rawle, 101; 2 Wharton, Ev. § 958.

In the language of Lord LYNDHURST, in Blackett v. Royal Exch. Assur. Co. 2 Tyrw. 266, usage may be admissible to explain what is doubtful, but is never admissible to contradict what is plain. Spartali v. Benecke, 10 C. B. 213; Renner v. Bank of Columbia, 9 Wheat. 581, 6 L. ed. 166. See Wigglesworth v. Dallison, 1 Smith, Lead. Cas. 588.

The custom offered to be proven, to contradict the contract, is illegal, contrary to public morals and policy, and therefore void, and was rightly excluded by the court below. Greene v. Tyler, 39 Pa. 361; Yates v. Pym, 6 Taunt. 446; Collender v. Dinsmore, 55 N. Y. 200, 14 Am. Rep. 224; Stokes v. Fenner, 10 Phila. 14.

PER CURIAM:

The judges who heard the argument of this case are equally divided in opinion, and therefore the judgment is affirmed by a divided court.